THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:18-cr-00018 |
| | : (JUDGE MARIANI) |
| JOHAN LARA-MEJIA, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

On July 11, 2019, pursuant to a written plea agreement (Doc. 117), Johan Lara-Mejia entered a plea of guilty as to Count 1 of the Government's Indictment (Doc. 1) charging Defendant with Conspiracy to Distribute and Possess with Intent to Distribute 40 Grams and More of Fentanyl, Methamphetamine, and Heroin, in violation of 21 U.S.C. § 846. (*See* Doc. 159) Presently before the Court is Lara-Mejia's 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 151.) For the reasons set forth below, the Court will deny Lara-Mejia's § 2255 Motion.

### II. BACKGROUND

On September 10, 2017, Pennsylvania State Police (PSP) troopers were dispatched to Ramada Inn, Hazleton, Pennsylvania, on a report of possible drug activity in one of the hotel rooms. (*See* Final Presentence Investigation Report, Doc. 134, at 7.)

Troopers knocked on the door of Room 212 of the hotel and two males later identified as Johan Lara-Mejia and Joel Mejia-Bisono opened the door. (*Id.*) PSP officers requested the two males enter the hallway. (*Id.*) Mejia-Bisono purposely closed the hotel room door, which locked behind him. (*Id.*) He claimed to not have a key and that they would not be able to re-enter their room at that time. (*Id.*)

The hotel manager arrived a couple minutes later with a key. (*Id.*) As the manager opened the door, both Lara-Mejia and Mejia-Bisono fled the hotel and ran through the parking lot into a wooded area nearby. (*See* Doc. 134 at 7.)

Troopers arrested Lara-Mejia following a brief foot pursuit but Mejia-Bisono avoided apprehension for another seven months. (*Id.*) Lara-Mejia was found to be in possession of approximately five bundles of fentanyl. (*Id.*)

Later that date, a PSP Clandestine Lab Emergency Response Team executed a search warrant inside Room 212. (*Id.*) Many items of contraband were seized from the hotel room, including approximately 57 grams of fentanyl, a Meloir .25 caliber handgun, a digital scale, thousands of bags utilized for drug packaging, and an unspecified quantity of methamphetamine and heroin. (*Id.*)

On October 30, 2020, the Court held a change-of-plea hearing where Lara-Mejia pleaded guilty to Count I of the Indictment charging him with conspiring to distribute a controlled substance. (*See* Transcript of Change of Plea Hearing, Doc. 159.) On June 15, 2021, the Court held a sentencing hearing at which it heard argument from defense counsel

regarding the factors set forth in 18 U.S.C. § 3553(a), as well as from Lara-Mejia. (*See* Doc. 160 at 8.) After considering the various sentencing factors, the Court imposed a sentence of eighty (80) months. (*Id.* at 15:12-16.) The sentence of 80 months was within the guidelines sentencing range, as Lara-Mejia's criminal history category was IV and the appropriately calculated guideline imprisonment range was 70 to 87 months. (*Id.* at 2:14:19.)

### III. STANDARD OF REVIEW

#### *a. 28 U.S.C. § 2255*

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. 2255(f)(3). A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b).

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005), the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255,

4

our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134 (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

*Id.* at 545-46. Generally, the petitioner bears the burden of proof in § 2255 proceedings. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised for the first time on collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 689–92). For the first prong, *Strickland* emphasizes that a court's evaluation of an attorney's performance must be "highly deferential" so as to diminish "the distorting effects of hindsight." *Strickland*,

5

466 U.S. at 689. To establish prejudice under *Strickland*'s second prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The petitioner bears the burden of establishing that counsel's performance was constitutionally inadequate and prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002). In asserting prejudice, the petitioner must show more than a conceivable likelihood that the outcome would have been different.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v. Belmontes*, 558 U. S. [15] (2009) (per curiam) (slip op., at 13); *Strickland*, 466 U. S., at 693. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693.

*Harrington v. Richter*, 562 U.S. 86, 112-113 (2011).

## IV. ANALYSIS

Lara-Mejia's § 2255 Motion seeks relief on the basis that he received ineffective assistance of counsel. (*See* Doc. 151 at 3.) Lara-Mejia sets forth two grounds for relief.[1]

---

[1] Lara-Mejia offers no brief in support of his § 2255 Motion and provides no additional statements or facts pertaining to his counsel's alleged ineffectiveness beyond the single conclusory statements discussed in this analysis. Lara-Mejia is unable to make out an adequate basis for a hearing or relief based on these

6

First, Lara-Mejia alleges that his "[c]ounsel was ineffective for failing to seek a downward variance at sentencing based on disparities between being a non-citizen and deported, and defendant's [sic] that are citizens." (*Id.* at 3.) Second, Lara-Mejia alleges that his "[c]ounsel was ineffective for failing to seek a downward variance at sentencing based on unusually harsh conditions of confinement prior to and after sentencing." (*Id.*) As the Court explains below, these allegations do not warrant a hearing or relief for Lara-Mejia. The Court will address each of Lara-Mejia's alleged grounds for relief in the order in which they were raised.

## A. Ground One

Lara-Mejia's first ground for relief alleges that "[c]ounsel was ineffective for failing to seek a downward variance at sentencing based on disparities between being a non-citizen and deported, and defendant's [sic] that are citizens." (Doc. 151 at 3.)

The Third Circuit has recently noted that judicial scrutiny of counsel's strategy must be viewed with great deference:

> [W]e are cognizant that "[j]udicial scrutiny of counsel's performance must be highly deferential." *See id.; Burt v. Titlow*, 571 U.S. 12, 22–23, 134 S.Ct. 10, 187 L.Ed.2d 348 (2013); *see also United States v. McCoy*, 410 F.3d 124, 135 (3d Cir. 2005) ("[C]ourts have been highly deferential to counsel's strategic decisions."). And while judges may be tempted to second guess defense counsel's decisions, we must keep in mind that "advocacy is an art and not a science, and ... strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681, 104 S.Ct. 2052.

---

statements alone. *See Albrecht*, 485 F.3d at 127 (citing *Strickland*, 466 U.S. at 689–92). Nonetheless, out of an abundance of caution, the Court will proceed to fully analyze Lara-Mejia's two grounds for relief.

7

*Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022).

Here, Lara-Mejia alleges no facts as to how his counsel was ineffective in failing to seek a downward variance considering Lara-Mejia's risk of deportation. (*See generally* Doc. 151.) In fact, the transcript of Lara-Mejia's sentencing hearing reveals that his counsel extensively argued that the Court should consider the risk of deportation in imposing Lara-Mejia's sentence:

> MR. WATT: Thank you, Your Honor. I've been representing Mr. Lara-Mejia now for quite a few years. I would just note a few things that are, obviously, stated in the Pre-sentence Investigation Report, but I think warrant further attention.
>
> First and foremost, my client is 25 years old, he's a relatively young man with a lot of life to live. We all recognize the dangers and the problems that heroin and Fentanyl have caused in our community, and, unfortunately, nobody knows that better than Mr. Lara-Mejia, having been hospitalized for ingesting those substances.
>
> He's in a situation where, his entire life, he has been using drugs up until his incarceration. I've talked to him about the fact that his incarceration may have been a blessing in disguise, as it caused him to stop taking pills with opiates in them, caused him to stop being involved in these types of drug activities, and being so young, he does have a lot of life left to live.
>
> As we sit here now, with the Court about to impose punishment upon him, he does have a significant amount of time that he's already spent in prison, certainly, will be spending additional time in prison, but his most serious consequence is the fact that his entire family, other than his mother who recently gained citizenship to come to our country, is in the United States, and he's going to be leaving.
>
> So this is a life sentence for him, and I don't know an amount of jail time or incarceration that would make that better or worse, but he's going to be dropped off back to a country that he was from, with no family and no friends, no job, and he will have to start over. That's unfortunate, because he is so

young, and that punishment is going to stay with him forever. I would just note a couple other things about Mr. Lara-Mejia. From day one, he has informed me about his drug usage. Certainly, that's not an excuse, but I think it's relevant for the Court to consider.

The nature of the offense. Obviously, we can't sugar-coat it, we can't excuse it, and we can't pretend that it's better than it is, because it's not dealing with this type of drug, it is dangerous, as he knows, and that's why we're here, and that's probably why we're not in State Court. We're in the big leagues, and he knows that.

He's ready to pay the price for that. He has accepted his responsibility. I will note that he has been very cooperative with me, he has been -- he heeded all of my advice along the way. He has been anxious to get this matter behind him, so he can be moved to his new facility so he could do his time and, hopefully, be productive.

I'll note that he has been incarcerated for about 45 months. I just talked to him before today's proceeding. Other than losing his job at the prison cafeteria, he has no misconduct, he has not been fighting, he has not been in any trouble at the prison, so I don't expect him to be a problem going forward.

The only other things that I would like to note that I think are relevant, Your Honor, is the fact that we get to a criminal history category 7 through Mr. Lara-Mejia pulling a fire alarm, which, by all accounts, is a low-level misdemeanor that he then violated his Probation and led to incarceration, and, ultimately, a resisting arrest offense, which, by state account, would be a misdemeanor. There's also a possession charge, which is also a misdemeanor.

The timing of them and the fact that he violated his Probation and, ultimately, served time in jail led to an increased criminal history category. That's what got him above the five-year mandatory. If it weren't for that, he would have -- the guidelines would have been below the five-year mandatory, but due to the nature and the relatively lack of criminal history in the form of any violent offenses, I would ask the Court to consider that when rendering its judgment today.

Mr. Lara-Mejia is prepared to fulfill the obligations of his sentence, whether that's a guideline range sentence or a different sentence, but we would ask the Court to consider everything that's been brought to the Court's

attention, everything that the Court knows about him through the PSR, and consider a sentence closer to the five-year mandatory, the 60-month incarceration which, again, pales in comparison to the life sentence that he will be afforded for his deportation following his incarceration.

(Doc. 160 at 4-8.)

This testimony reveals that Lara-Mejia's counsel argued for a sentence that would account for the fact that deportation would have a permanent impact on Lara-Mejia's life as a young adult. (*Id.*) In imposing Lara-Mejia's sentence, the Court acknowledged and considered the consequences that deportation would have:

> Now, I will say, though, that there is a substantial likelihood that you will be deported, and I'm aware that the deportation process itself requires your further incarceration from anywhere from three to six months, and I will take that into consideration here.
>
> But, fundamentally, there's really nothing that I can see here that would allow me to say, yes, you are entitled to a sentence below the guidelines, I just don't see it. So I will impose a sentence in this case of 80 months. And I'll enter the following disposition in this case:
>
> Pursuant to the Sentencing Reform Act of 1984, it is the Judgment of the Court that the Defendant Johan Lara-Mejia is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 80 months.

(Doc. 160 at 15:7-20.)

Additionally, to the extent that Lara-Mejia is contending that the Court erred in its imposition of Lara-Mejia's sentence, the Third Circuit has noted that:

> [b]ased on *Addonizio*, other circuit courts have concluded that a sentencing error is not a fundamental defect requiring § 2255 relief when a prisoner is sentenced below the statutory maximum. *See Foote*, 784 F.3d at 937; *see also Spencer*, 773 F.3d at 1138 (citing *Addonizio*, 442 U.S. at 186–87, 99 S.Ct. 2235) (noting that a sentence "less than the statutory maximum

10

sentence prescribed by Congress" is lawful, and thus not a fundamental defect); *Hawkins*, 706 F.3d at 822, 824; *Sun Bear*, 644 F.3d at 705; *cf. Snider*, 908 F.3d at 191 (citing *Addonizio*, 442 U.S. at 187, 99 S.Ct. 2235) (noting that the defendant's corrected sentence would fall within the same Guidelines range).

*United States v. Folk*, 954 F.3d 597, 605 (3d Cir. 2020).

To the extent Lara-Mejia alleges an error in sentencing on the part of the Court, because Lara-Mejia's sentence was below the statutory maximum sentence, there is no cognizable claim for relief on this basis. *Id*. Additionally, there is no basis by which the Court could conclude that the conduct of Lara-Mejia's counsel fell below "an objective standard of reasonableness." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007). Therefore, Lara-Mejia's first ground therefore does not warrant a hearing or relief.

## B. Ground Two

Lara-Mejia's second ground for relief alleges that "[c]ounsel was ineffective for failing to seek a downward variance at sentencing based on unusually harsh conditions of confinement prior to and after sentencing." (Doc. 151 at 3.) Lara-Mejia alleges no facts as to what unusually harsh conditions he has endured while in confinement, and there is no reference to these conditions in either the change-of-plea hearing or sentencing hearing.[2] (*See* Docs. 159 & 160.) Lara-Mejia's singular conclusory statement with respect to this

---

[2] Lara-Mejia's allegation of there being harsh confinement conditions after sentencing is irrelevant to the consideration of whether his counsel was ineffective at sentencing, and thus will be disregarded accordingly.

11

ground is insufficient to warrant relief. *See Albrecht*, 485 F.3d at 127 (citing *Strickland*, 466 U.S. at 689–92).

The only mention of Lara-Mejia's time in prison is the explanation by his counsel that "his incarceration may have been a blessing in disguise, as it caused him to stop taking pills with opiates in them, caused him to stop being involved in these types of drug activities." (Doc. 160 at 5:12-15.) Lara-Mejia offers no facts to suggest that his counsel was aware of any harsh conditions that he was allegedly subjected to while confined. Additionally, Lara-Mejia does not explain how it would have been "reasonably likely [that his sentencing] would have been different," *Harrington*, 562 U.S. at 112-113, had his counsel raised the allegedly harsh conditions of Lara-Mejia's confinement.

Because Lara-Mejia's allegation in this respect is only a single conclusory statement that is unsupported by facts, Lara-Mejia does not meet either of *Strickland*'s prongs with respect to his second ground for relief, and the Court concludes that no hearing or relief is warranted on this ground. *See Strickland*, 466 U.S. at 689–92.

The Court finds that Lara-Mejia's two grounds warrant no hearing or relief. Therefore, the Court will deny Lara-Mejia's § 2255 Motion (Doc. 151) accordingly.

### V. EVIDENTIARY HEARING

Section 2255(b) advises that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon,

determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The decision to hold a hearing is wholly within the discretion of the district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D.Pa. March 1, 2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In this case, no evidentiary hearing is necessary because "the motion and files and records of this case show conclusively that the movant is not entitled to relief." *Eckenberger*, 2022 WL 609208, at *5 (M.D.Pa. March 1, 2022) (internal quotations and citations omitted)); *see also Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly emphasized that bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition"); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 300-02 (3d Cir. 1991) (declining to hold evidentiary hearing on petitioner's § 2255 ineffectiveness claim "absent identification of some facts that support a contention of ineffectiveness" because doing otherwise will encourage meritless petitions burdening judicial resources). Here, Lara-Mejia is not entitled to relief and his allegations rise only to the level of bare assertions that are clearly contradicted by the record.

## VI. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at *8 (E.D.Pa. June 8, 2022) (citing 28 U.S.C. § 2253(c)(1)). The petitioner must make a "substantial showing of the denial of a constitutional right" for the district court to issue a COA, which requires a

showing that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, a COA is not warranted on Lara-Mejia's claim because the Court finds that reasonable jurists would not find this Court's resolution of Lara-Mejia's constitutional claim debatable or wrong.

## VII. CONCLUSION

For the aforementioned reasons, the Court will deny Lara-Mejia's 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 151.) A separate Order will follow.

_____
Robert D. Mariani
United States District Judge